Date signed December 29, 2009



PAUL MANNES
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

IN RE:                                           :
                                                 :
PHILOMENA N. OKIGBO                              :        Case No. 09-28296PM
                                                 :              Chapter 13
        Debtor                                   :
- - - - - - - - - - - - - - - - - - - - - - - - :

## MEMORANDUM OF DECISION

Debtor filed a Motion to Enforce the Automatic Stay of 11 U.S.C. § 362(a). The motion challenged the right of the creditor, Montgomery County Teachers Credit Union ("Teachers CU") to freeze funds of the Debtor on deposit with it in order to be able to effect a setoff of its claim against the debt owed by it to the Debtor. The rule of decision for this contested matter is governed by two sections of the Bankruptcy Code and by the opinion of the Supreme Court entered in the case of *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995). Debtor's motion was filed October 28, 2009. This motion was set for hearing by the Clerk's notice issued October 29, 2009. On November 10, 2009, contemporaneously with the filing of its opposition to Debtor's motion, Teachers CU filed a Motion for Relief from Stay. This memorandum will deal with the Motion for Relief From Stay and the Motion to Enforce the Automatic Stay.

The relevant statutory provisions are:

**11 U.S.C. § 362.  Automatic stay**
    (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
                *           *           *           *           *

>           (7) the setoff of any debt owing to the debtor that arose before the
> commencement of the case under this title against any claim against the
> debtor.

**11 U.S.C. § 553.  Setoff**
>      (a) Except as otherwise provided in this section and in sections 362 and
> 363 of this title, this title does not affect any right of a creditor to offset a mutual
> debt owing by such creditor to the debtor that arose before the commencement of
> the case under this title against a claim of such creditor against the debtor that
> arose before the commencement of the case[.][1]

The court will deal first with the issue of the use of what is termed an "administrative hold" or "administrative freeze" by Teachers CU to retain the funds on deposit by the Debtor in order to enable it to set off its prepetition claim derived from Debtor's liability from use of a credit card issued by Teachers CU.  The body of law regarding the use of the administrative hold and its distinction from a setoff may be found in the *Strumpf* case filed in this court. Strumpf sought to hold the Citizens Bank of Maryland ("Citizens") in contempt on account of its placing an administrative freeze on the funds of his account while it prosecuted a motion for relief from stay to allow it to set off its prepetition claim against the account funds.  After a brief hearing and relying upon the case of *U.S. v. Norton*, 764 F.2d 1004, 1006-1007 (CA4 1985), this court found Citizens in contempt.[2] On appeal, this court's decision was reversed by the District Court. *Citizens Bank of Maryland v. Strumpf*, 138 B.R. 792, 795 (D. Md. 1992).  The District Court found Citizens in a "catch-22" situation and concluded:

> The Court finds that the placing of an administrative hold on an account pending
> the Bankruptcy Court's ruling on the Bank's Motion for relief from Automatic
> Stay and for Setoff does not equate to a setoff as a matter of law.  In fact,
> permitting the Bank to freeze the funds until such time as the Court rules on the
> Bank's Motion for Relief from Automatic Stay and for Setoff is the only sensible

---

[1]There is no contention that any exceptions are applicable.

[2]On November 28, 1989, Citizens made an unsecured consumer loan to Strumpf of $5,068.75 to be repaid in 24 monthly installments.  The note provided that upon default, Citizens had the right accelerate the balance due and the right of setoff.  On January 25, 1991, Strumpf filed a bankruptcy case under chapter 13. On October 7, 1991, Citizens filed a motion for relief from stay and contemporaneously placed an administrative hold on $3,500.00 in Strumpf's account, $3,250.48 being due on the note at the time.  Strumpf's motion to hold Citizens in contempt was filed two days later.

procedural approach under these circumstances.

On appeal by Strumpf, the United States Court of Appeals for the Fourth Circuit found that the action by Citizens violated the provisions of 11 U.S.C. § 362(a)(7) and that the bankruptcy court did not abuse its discretion by finding that Citizens had violated the automatic stay and awarding damages. *Citizens Bank of Maryland v. Strumpf*, 37 F.3d 155, 158-159 (CA4 1994).  The Court was unimpressed with what the District Court found to be the "bankers dilemma" and found the administrative hold tantamount to the exercise of a right of setoff and in violation of the clear and unambiguous language of 11 U.S.C. §362(a)(7). *Id.* at 159.  This decision was reversed by a unanimous Supreme Court.  The Court noted that Citizens had not permanently and absolutely refused to pay its debt, but was only seeking to maintain the status quo while it sought relief under 11 U.S.C. § 362(d).  The administrative hold that was accomplished contemporaneously with the filing of the motion for relief from stay was upheld by the Court as a temporary device, not a setoff.  The Court reasoned that Citizens had not effected a setoff as it neither recorded the transaction nor reduced Strumpf's account balance. *Strumpf*, 516 U.S. at 19.

Cognizant of the holding in *Strumpf,* Debtor raises two points in support of her motion and in opposition to the motion for relief from stay.  The first part of Debtor's argument is that the administrative hold on funds violated the stay in the absence of the filing of a contemporaneous motion for relief from stay.  Debtor next argues that because she listed the savings account funds as exempt, Teachers CU could not set off its claim against the funds in her account.  In support of the her argument to contravene the right of setoff, Debtor relies upon the case of *In re Cole*, 104 B.R. 736, 740-41 (BC Md. 1989).  *Cole* dealt with a utility's right to set off a prepetition security deposit against a prepetition claim.  In denying the motion for relief from stay to allow the setoff, Judge Derby stated, "[w]here as here, however, the deposit has not been offset prepetition, where the deposit has been claimed as exempt, where the amount exempted is within the nonwaivable exemption under State law and Debtor has no other assets to exempt, and where there has not been an express grant of a security interest in the deposit to the utility to secure payment for future service, the general rule that a creditor may not exercise a setoff against exempt property should prevail."[3] Cited in support of the *Cole* ruling were *Matter of Kapp*, 69 B.R. 652 (D. Md. 1987) and MD. CODE ANN. CTS. & JUD. PROC. § 11-507(4) (1989)

---

[3] The issue of the adequacy of the security interest claimed by Teachers CU will be discussed later in the opinion.

that provides:

> **§ 11-507.  Exemptions not to impair certain liens.**
>
> The provisions of this subtitle relative to exemptions do not impair a:
> (1) Vendor's purchase money lien on land;
> (2) Mechanics' lien;
> (3) Tax lien;
> (4) Mortgage; deed of trust; or other security interest.  (An. Code 1957, art. 83, § 12; 1973, 1st Sp. Sess., ch. 2, § 1.)

*Kapp* contains a thorough analysis of Maryland exemption law and its relationship to avoidance of liens under 11 U.S.C. § 522(f) in bankruptcy cases that will not be repeated here. After exploring statutory history and an opinion of the Maryland Attorney General, as well as the introduction to U.C.C. § 1-201, Judge Smalkin concluded "that the term 'other security interest' as used in MD. CODE ANN CTS. & JUD. PROC. § 11-507(4) does not include security interests in personal property.  The appellees' property is therefore subject to an exemption under 11 U.S.C. § 522(b).  The liens are avoidable under 11 U.S.C. § 522(f)." *Id*. at 656.

In opposition to this proposition, Teachers CU points out that there are two sources of authority for it to apply the funds of the Debtor on deposit with it to her outstanding credit card balance.  Teachers CU first relies upon 12 U.S.C. § 1757(11) and 12 C.F.R. part 701, section 701.39 that, in relevant part, state as follows:

> **§ 1757.  Powers**
>
> A federal credit union shall have succession in its corporate name during its existence and shall have power --
>
> \*       \*       \*       \*       \*
>
> (11) to impress and enforce a lien upon the shares and dividends of any member, to the extent of any loan made to him and any dues or charges payable by him.
>
> **§ 701.39  Statutory lien.**
>
> \*       \*       \*       \*       \*
>
> (b) *Superior claim*.  Except as otherwise provided by law, a statutory lien gives the federal credit union priority over other creditors when claims are asserted against a member's account(s).
> (c) *Impressing a statutory lien*.  Except as otherwise provided by federal law, a

>   credit union can impress a statutory lien on a member's account(s)--
>       (1) *Account records*.  By giving notice thereof in the member's account agreement(s) or other account opening documentation; or
>       (2) *Loan documents*.  In the case of a loan, by giving notice thereof in a loan document signed or otherwise acknowledged by the member(s).
>
>     *    *    *    *    *
>
>   (d) *Enforcing a statutory lien* -- (1) *Application of funds*.  Except as otherwise provided by federal law, a federal credit union may enforce its statutory lien against a member's account(s) by debiting funds in the account and applying them to the extent of any of the member's outstanding financial obligations to the credit union.
>   (2) *Default required*.  A federal credit union may enforce its statutory lien against a member's account(s) only when the member fails to satisfy an outstanding financial obligation due and payable to the credit union.
>   (3) *Neither judgment nor set-off required*.  A federal credit union need not obtain a court judgment on the member's debt, nor exercise the equitable right of set-off, prior to enforcing its statutory lien against the member's account.

Teachers CU also relies upon what it argues is a consensual Security Agreement contained in Debtor's Loanliner credit application for a credit card that is found in the fine print in the next to last paragraph above Debtor's signature:

>   If you are applying for a credit card, you understand that the use of your card will constitute acknowledgment of receipt and agreement to the terms of the credit card agreement and disclosures accompanying the credit card.  You grant us a security interest in all individual and joint share and/or deposit accounts you have with us now and in the future to secure your credit card account.  When you are in default, you authorize us to apply the balance in these accounts to any amounts due.  Shares and deposits in an Individual Retirement Account, and any other account that would lose special tax treatment under state or federal law if given as security, are not subject to the security interest you have given in your shares and deposits.  Collateral securing other loans you have with the Credit Union may also secure this loan, except that a dwelling will never be considered as security for this Account, notwithstanding anything to the contrary in any other agreement.

In viewing the issues, the court must also consider the following provision of Regulation Z, 12 C.F.R. §226.12(d):

>   **Reg. Z § 226.12  Truth in Lending**
>
>   (d) *Offsets by card issuer prohibited.*
>       (1) A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising

    from a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer.
        (2) This paragraph does not alter or affect the right of a card issuer acting under state or federal law to do any of the following with regard to funds of a cardholder held on deposit with the card issuer if the same procedure is constitutionally available to creditors generally: obtain or enforce a consensual security interest in the funds; attach or otherwise levy upon the funds; or obtain or enforce a court order relating to the funds.

In support for her rejoinder to the proposition that Teachers CU has a valid security interest, Debtor relies upon excerpts from the Official Staff Commentary on Regulation Z.[4]  If there is no security agreement, then Reg. Z § 226.12(d)(1) is applicable.  Thus, the outcome of this dispute depends in large part as to whether the Loanliner Application effectually creates a security interest in the deposit account.  The court finds that it does not.  The Official Staff Commentary describes what is required to effect a security agreement in a deposit account so as to enable the placement of an administrative hold:

**12(d) Offsets By Card Issuer Prohibited**

*Paragraph 12(d)(1).*

    (1) *"Holds" on accounts.*  "Freezing" or placing a hold on funds in the cardholder's deposit account is the functional equivalent of an offset and would contravene the prohibition in section 226.12(d)(1), unless done in the context of one of the exceptions specified in section 226.12(d)(2).  For example, if the terms of a security agreement permitted the card issuer to place a hold on the funds, the hold would not violate the offset prohibition. . . .

*Paragraph 12(d)(2).*

    (1). . . For a security interest to qualify for the exception under section 226.12(d)(2) the following conditions must be met:
- The consumer must be aware that granting a security interest is a condition for the credit card account (or for more favorable account terms) and must specifically intend to grant a security interest in a deposit account.  Indicia of the consumer's awareness and intent could

---

    3. Courts have long recognized that considerable weight should be accorded an agency's construction of a statutory scheme, particularly those interpretations set forth in the Official Staff Commentaries of the Federal Reserve Board in the administration of its own statutes, as is the case here, considering the care, consistency, formality and relative expertness of the staff.  *See Ford Motor Credit v. Milhollin,* 444 U.S. 555, 566 (1980); *U.S. v. Mead Corp.,* 533 U.S. 218, 227-228 (2001); *Cetto v. LaSalle Bank N.A.*, 518 F.3d 263, 274 (CA4 2008).

> include, or example--
> --Separate signature or initials on the agreement indicating that a security interest is being given
> --Placement of the security agreement on a separate page, or otherwise separating the security interest provisions from other contract and disclosure provisions
> --Reference to a specific amount of deposited funds or to a specific deposit account number

The form used by Teachers CU to attempt to create a security interest in the deposit account so as to enable it to set off funds that might be due on the credit card falls well short of the mark. It is on the second page of a thirteen page credit card application and disclosure and, while it is one paragraph above the borrower's signature line, there are none of the bells and whistles required so as to focus Debtor's attention on it. One cannot infer any indicia of the Debtor's awareness and intent from the placement of the paragraph and the font used. The court finds that the Loanliner Application signed by the Debtor on October 12, 2006, attached to the Amended Reply to Debtor's Response to Motion for Relief from the Stay (D.E. No. 46-1), was insufficient to create a security agreement so as to overcome the bar of Reg. Z, 12 C.F.R.§226.12(d) and to allow the placement of an administrative hold on the funds on deposit. As explained in the Official Staff Commentary, this is the functional equivalent of an offset and contravenes the prohibition. This defect is easily curable by a revision of the loan application.

With respect to the question as to whether the exemption of the account impairs the lien asserted by Teachers CU, the court is persuaded by Judge Smalkin's conclusion in *Kapp*, *supra*, that the term "other security interest," in MD. CODE ANN., CTS. & JUD. PROC. § 11-507(4) does not include a security interest in personal property. There being no controlling appellate decision, the only way this issue could be determined with absolute certainty would be by certification to the Court of Appeals of Maryland pursuant to MD. CODE ANN., CTS.. & JUD. PROC. § 12-603 (2006). While a decision of that court would put the matter to rest, the court does not believe it is necessary to the decision in this case in view of the controlling federal law.

In conclusion, under Bankruptcy Rule 4003(b)(1), an objection to a claim of exemptions must be filed within 30 days of the meeting of creditors. No such objection was filed. The funds held by Debtor in the deposit account were unlawfully withheld from her. It cannot be said here, as the Court said in *Strumpf*, that the creditor "refused to pay its debt, not permanently and absolutely, but only while it sought relief under Section 362(d) from the automatic stay." 516 U.S. at 19. Here, the action of Teachers CU was a knee-jerk reaction, unaccompanied by a

Motion for Relief from Stay as required under *Strumpf* in order for an administrative hold to be placed on funds on deposit by Debtor. Teachers CU ultimately filed a Motion for Relief from Stay but not until well after Debtor sought relief.

With respect to damages, Debtor is granted 14 days to file a petition setting forth her claim for damages on account of the violation of the automatic stay of Section 362(a). For the reasons stated in open court in the course of the hearing, a request for punitive damages will be viewed by the court as inappropriate.

Orders will be entered in accordance with the foregoing opinion.

cc:
John P. Van Beek/Holly A. Currier, Esq., 510 King Street, Suite 416, P.O. Box 1946, Alexandria
       VA  22313-1946
Victoria King Taitano, Esq., MD Legal Aid, 500 E. Lexington St., Baltimore  MD 21090
Philomena N. Okigbo, 2749 Sweet Clover Court, Silver Spring, MD 20840
Timothy P. Branigan, Esquire, P.O. Box 1902, Laurel MD 20725-1902

**End of Memorandum**